UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHAEL FISHER, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) No. 1:18-cv-00649-JMS-DML ) |
| MARION COUNTY JAIL, MARION COUNTY SHERIFF'S OFFICE, LT. COLONEL JAMES MARTIN, MARION COUNTY SHERIFF JOHN LAYTON, JOHN DOE JAIL GUARD 1, JOHN DOE JAIL GUARD 2, JOHN DOE JAIL GUARD 3, | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**ORDER**

This case arises out of Plaintiff Michael Fisher's September 2017 stay in the Marion County Jail. Mr. Fisher filed the instant Complaint against the Marion County Jail, the Marion County Sheriff's Office, Lt. Col. James Martin, Marion County Sheriff John Layton, and three unnamed jail guards ("Defendants"), alleging that he suffered physical injuries while in custody in violation of state law and the United States Constitution. Presently pending before the Court is Defendants' partial Motion to Dismiss. For the following reasons, the Court **GRANTS** Defendants' Motion in part and **DENIES** Defendants' Motion in part.

**I.**
**STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim that does not state a right to relief. The Federal Rules of Civil Procedure require that a complaint provide the defendant with "fair notice of what the…claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555

1

(2007)). In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff. *See Active Disposal Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011). A Rule 12(b)(6) motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The Court will not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief. *See McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011). Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## II.
### BACKGROUND

The following allegations are taken from Mr. Fisher's Complaint, [Filing No. 1], and are accepted as true for purposes of deciding the pending Motion, consistent with the applicable standard of review.

On September 21, 2017, Mr. Fisher was arrested for public intoxication and held at the Marion County Jail. [Filing No. 1 at 3.] In the early morning hours of September 22, 2017, Mr. Fisher requested that the jail guards administer his prescribed medications. [Filing No. 1 at 3.] In response to this request, three jail guards removed Mr. Fisher from his cell and took him to a secluded area, where they proceeded to "kick, beat, stomp, and otherwise physically assault" him. [Filing No. 1 at 3.] Mr. Fisher sought treatment from the jail nurse, and she informed him that the doctor could not help him with broken ribs and that the Marion County Jail would not treat his injuries until he was moved to general population. [Filing No. 1 at 4.] Mr. Fisher also reported

2

the assault to a jail employee while being fingerprinted, but that employee did not respond and did not report Mr. Fisher's complaint. [Filing No. 1 at 4.] Both the fingerprinting employee and the nurse refused to provide Mr. Fisher with a grievance form. [Filing No. 1 at 4.]

On September 25, 2017, after Mr. Fisher's release from jail, he sought medical treatment at St. Francis Hospital. [Filing No. 1 at 4.] The doctors ordered X-rays and diagnosed Mr. Fisher with broken ribs. [Filing No. 1 at 4.] On October 31, 2017, Mr. Fisher went to Eskenazi Hospital, where doctors also performed X-rays and diagnosed him with broken ribs and "other physical trauma." [Filing No. 1 at 4.]

On October 24, 2017, Mr. Fisher sent a Notice of Tort Claim to Defendants, the Office of the Attorney General, and the Indiana Political Management Risk Assessment Office. [Filing No. 1 at 4.] On March 5, 2017, Mr. Fisher filed this lawsuit asserting various state law and federal constitutional claims against Defendants under 42 U.S.C. § 1983. [Filing No. 1 at 11-14.] Defendants have moved to dismiss several of Mr. Fisher's claims, and that Motion is now ripe for the Court's review. [Filing No. 10.]

### III.
### DISCUSSION

The Court notes at the outset that Mr. Fisher's Complaint identifies the claims being raised in a confusing manner. He raises sixteen claims against various defendants, though several of the claim numbers are repeated, and several reference a city defendant who is not a party to this lawsuit. [Filing No. 1 at 23.] The Court has done its best to construe the Complaint despite the complicated presentation.

In support of their Motion to Dismiss, Defendants argue that: (1) all claims against the Marion County Jail should be dismissed because the Jail is an entity not amenable to suit; (2) Count XI should be dismissed because employees of a single government entity cannot be held

3

liable for conspiring to interfere with Mr. Fisher's civil rights; (3) the official capacity claims against Lt. Col. Martin and Sheriff Layton should be dismissed because they are duplicative of the claims against the Marion County Sheriff's Office; (4) the due process and equal protection claims in Count VI should be dismissed because (a) the claim should be addressed within another claim already raised by Mr. Fisher, or (b) Defendants are entitled to qualified immunity; and (5) Count XIV should be dismissed because the conduct alleged does not constitute a First Amendment violation and/or Defendants are entitled to qualified immunity. The Court addresses each argument in turn.

### A. Relinquished Claims

In response to Defendants' Motion, Mr. Fisher states that he relinquishes his claims against the Marion County Jail as a party in this matter. [Filing No. 17 at 3.] He also relinquishes his claim in Count XI, for conspiracy to interfere with civil rights under 42 U.S.C. § 1985(3). [Filing No. 17 at 3.] Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss the Marion County Jail as a party, and it **GRANTS** Defendants' Motion to Dismiss Count XI.

### B. Official Capacity Claims: Sheriff Layton and Lt. Col. Martin

Defendants move to dismiss all of Mr. Fisher's federal official-capacity claims against Sheriff Layton and Lt. Col. Martin, arguing that under the standard imposed by *Monell v. Dept. of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 694 (1978), these claims are entirely duplicative of those against the Marion County Sheriff's Office. [Filing No. 11 at 3.] In response, Mr. Fisher argues that county sheriffs and senior jail officials can be held liable in their official capacities, in addition to the government entity, for "systemic violations" of constitutional protections. [Filing No. 17 at 3.] Mr. Fisher argues that it is too early in the case to determine whether either defendant is responsible for creating policies and systemic conditions that led to the violation of Mr. Fisher's

4

constitutional rights. [Filing No. 17 at 3-4.] In reply, Defendants argue that Mr. Fisher has "confused official capacity liability with individual liability." [Filing No. 18 at 1.]

"Actions against individual defendants in their official capacities are treated as suits brought against the government entity itself." *Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008); *see also Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011) ("[A]n official capacity suit is another way of pleading an action against an entity of which the officer is an agent."). And under the familiar *Monell* doctrine, "a governmental unit is not liable under § 1983 unless the deprivation of constitutional rights is caused by its own policy or custom." *Walker 526 F.3d at 977* (citing *Monell,* 436 U.S. at 694).

Here, Mr. Fisher has raised the same federal constitutional claims against both the Marion County Sheriff's office and Sheriff Layton and Lt. Col. Martin in their official capacities. As described above, the official-capacity claims are actually claims against the governmental entity, and they are duplicative when the governmental entity is also sued. *See, e.g., Jones v. Anderson Community School Corp.,* 2017 WL 4315132, at *3 (S.D. Ind. September 28, 2017); *Martin v. Copeland*, 2017 WL 168958, at *3 (N.D. Ind. January 17, 2017). Mr. Fisher appears to argue that *Antonelli v. Sheahan* holds to the contrary—that both the government entity and its agents in their official capacities may be simultaneously sued. 81 F.3d 1422, 1429 (7th Cir. 1996). Mr. Fisher misunderstands the inquiry in that case and the nature of *Monell* liability. *Antonelli* merely concluded that the plaintiff's pleading satisfied one of the theories of liability permitted under *Monell*—"systematic" violations under Section 1983 and the Eighth Amendment. *Id.*

Mr. Fisher appears concerned that dismissal of the official-capacity claims at this stage will prejudice him or deprive him of a claim, stating that further investigation is required to determine whether either defendant is responsible for "creating policies and systemic conditions that led to

5

the violations of Mr. Fisher's constitutional rights." [Filing No. 17 at 3-4.] But as the case law makes clear, the official-capacity claims are entirely redundant, and their dismissal will in no way affect Mr. Fisher's claims or investigation. His claims against the Marion County Sheriff's Office allow him to pursue liability under Section 1983, whether those claims are based upon: "(1) an express policy that would cause a constitutional deprivation if enforced; (2) a common practice that is so widespread and well-settled that it constitutes a custom or usage with the force of law even though it is not authorized by a written law or express policy; or (3) an allegation that a person with final policy-making authority caused a constitutional injury." *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015).

The official-capacity claims against Sheriff Layton and Lt. Col. Martin based upon *Monell* liability are duplicative of those raised against the Marion County Sheriff's Office, and they are **DISMISSED**.

### C. Fourteenth Amendment: Due Process and Equal Protection Claims

Defendants move to dismiss the due process and equal protection claims in Count VI, raising two arguments in support of dismissal.[1] The Court addresses each in turn.

*1. Proper Constitutional Provision*

Defendants argue that Mr. Fisher's due process and equal protection claims should be dismissed, because they are more properly raised as excessive force and deliberate indifference claims. [Filing No. 18 at 2.] Mr. Fisher responds that, at this stage, "it is difficult to determine

---

[1] Defendants initially raise three arguments, but one appears to be rendered moot in light of Mr. Fisher's response. [*See* Filing No. 11 at 4 (Defendants contending that Mr. Fisher's allegations regarding his inability to file a grievance, even if taken as true, do not amount to a violation of substantive due process); Filing No. 17 at 4 (Mr. Fisher responding that he was deprived of his procedural due process rights "when he was isolated from the other inmates and subjected to corporal punishment for asking for his prescribed medication without any procedural protection," and that this claim does not seek to vindicate his right to file a grievance).]

6

which constitutional provision was relevant to protect the Plaintiff during his confinement at the Marion County Jail." [Filing No. 17 at 6.] Mr. Fisher suggests that, for purposes of an excessive force analysis, he might either be classified as a free person or as a pre-trial detainee. [Filing No. 17 at 6.] He argues that because different constitutional provisions apply to those different categories (the Fourth Amendment to one, and the Fourteenth Amendment to the other), it is unclear which constitutional provision controls here. [Filing No. 17 at 6.] In reply, Defendants argue that the underlying factual allegations are all relevant excessive force and deliberate indifference claims—not due process or equal protection. [Filing No. 18 at 2.]

The parties seem to agree that Mr. Fisher has raised a constitutional challenge, and has alleged an injury caused by state actors while detained. Defendants argue that Mr. Fisher must narrow his claims to the "most applicable constitutional provision." While Defendants' invocation of *Graham v. Connor*, 490 U.S. 386 (1989), is well taken, the Seventh Circuit has stated "repeatedly (and frequently) that a complaint need not plead legal theories which can be learned during discovery." *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) (citing *Smith v. Med. Benefit Adm'rs Group, Inc.,* 639 F.3d 277, 283 n.2 (7th Cir. 2011); *Joseph v. Elan Motorsports Techs. Racing Corp.,* 638 F.3d 555, 561-62 (7th Cir. 2011); *Rabe v. United Air Lines, Inc.,* 636 F.3d 866, 872 (7th Cir. 2011) ("A complaint need not identify legal theories, and specifying an incorrect legal theory is not a fatal error.")).

As Mr. Fisher points out, the source of an individual's rights in this context depends on the individual's status. *See Lewis v. Downey*, 581 F.3d 467, 473 (7th Cir. 2009) ("The scope of an individual's right to be free from punishment – and, derivatively, the basis for an excessive force action brought under § 1983 – hinges on his status within the criminal justice system."). While Fourth Amendment protections apply at arrest and through a probable cause hearing, "due process

7

principles govern a pretrial detainee's conditions of confinement after the judicial determination of probable cause." *Ortiz v. City of Chicago,* 656 F.3d 523, 530 (7th Cir. 2011). Mr. Fisher's Complaint does not contain any allegations as to whether a probable cause determination had been made, but that fact impacts only which legal theory properly governs Mr. Fisher's claim. Although the occurrence or non-occurrence of a probable cause hearing may be a fact within Mr. Fisher's knowledge, he was not required to plead any specific legal theory in his Complaint. He was required to plead sufficient factual matter to state a plausible claim for relief, and he has done so here.

2. *Qualified Immunity*

Defendants next argue that Mr. Fisher's due process and equal protection claims should be dismissed because Defendants are entitled to qualified immunity. [Filing No. 11 at 4.] They contend that Mr. Fisher cannot point to any clearly established law indicating that Defendants should have known that their actions were illegal. [Filing No. 11 at 6.] Mr. Fisher responds that "every reasonable official would understand that beating a pretrial detainee in an unprovoked attack without penological purpose…would be a violation of Plaintiffs' protected rights." [Filing No. 17 at 7.] In reply, Defendants argue that Mr. Fisher was required to identify a closely analogous case that "should have put [D]efendants on notice that engaging in the specific type of conduct they engaged in was a violation of an inmate's constitutional rights." [Filing No. 18 at 2.] They contend that Mr. Fisher has failed to do so, and they are therefore immune from liability. [Filing No. 18 at 2.]

The Court addresses this argument succinctly, because Defendants' sole argument in support of a finding of qualified immunity—that Mr. Fisher has failed to identify an analogous case—misstates the standard applying to a motion to dismiss based on qualified immunity. While

pointing to a closely analogous case is one way to satisfy the standard, a plaintiff can also do so (as Mr. Fisher points out) by persuading the court that "the conduct is so egregious and unreasonable that, notwithstanding the lack of an analogous decision, no reasonable officer could have thought he was acting lawfully." *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 723-24 (7th Cir. 2013); *accord Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) ("Although this Court's caselaw does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate. In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law.") (internal quotation and citation omitted).

Accepting Mr. Fisher's allegations as true, the Court concludes that no reasonable officer could think he was acting lawfully in beating an inmate (resulting in multiple broken ribs and other injuries) with other officers, in response to an inmate's request to be administered his medication. And in any event, there is no shortage of clearly established law prohibiting similar conduct. *See, e.g., Herron v. Meyer*, 820 F.3d 860, 862-63 (7th Cir. 2016) ("It would violate the Due Process Clause or the Eighth Amendment, if not both, for a guard to clobber an inmate with a truncheon in order to penalize a request to correct prison records…[it is] clearly established law that guards may not administer their personal brand of punishment…")

For all of these reasons, the Court **DENIES** Defendants' Motion to Dismiss Count VI of Mr. Fisher's Complaint.

### D. First Amendment Claim

Defendants next argue that Mr. Fisher's First Amendment claim in Count XIV should be dismissed because Mr. Fisher has been able to file this lawsuit, and therefore has not been denied an opportunity to redress his grievances. [Filing No. 11 at 7.] Mr. Fisher responds that his First

9

Amendment Claim does not merely allege the denial of an ability to file a grievance. [Filing No. 17 at 8.] Mr. Fisher argues that his claim involves alleged retaliation against him for exercising his right to request his prescribed medication. [Filing No. 17 at 8.] In reply, Defendants argue that they are entitled to qualified immunity on Mr. Fisher's claim.[2] [Filing No. 18 at 3.]

Defendants do not dispute Mr. Fisher's assertion as to the scope of his claim being broader than simply the denial of an opportunity to file a grievance, so they appear to concede the only argument they raised in support of their Motion to Dismiss this claim. Their only reply to Mr. Fisher's response brief is that they are entitled to qualified immunity. Defendants raise this argument for the first time in their reply brief, and as they must be aware, arguments raised for the first time on reply are waived. *See, e.g., Griffin v. Bell*, 694 F.3d 817, 822 (7th Cir. 2012). The Court finds it particularly odd that Defendants would raise this argument for the first time in reply, since it depends on their contention that "once raised, the immunity becomes the plaintiff's burden to defeat." [Filing No. 18 at 3.] Mr. Fisher cannot, of course, satisfy this burden when Defendants raise an argument in their final brief.

The Court therefore **DENIES** Defendants' Motion to Dismiss Count XIV.

**E. Statement of Claims**

The Court makes a final note here in the hopes of clarifying and streamlining the resolution of this case as it proceeds. The Complaint in this matter contains an array of apparent mistakes and imprecise language that hinder a clear understanding of what claims are being raised. The Complaint contains two claims labeled as "Count 8," and two claims labeled as "Count 14." So

---

[2] The Court must point out that the scope of Defendants' Motion as to any First Amendment claim is unclear. While they request dismissal on Mr. Fisher's First Amendment claim in Count XIV, Mr. Fisher has two claims labeled as regarding the First Amendment, and they are both numbered "14." [Filing No. 1 at 23-25.]

while the Complaint appears to raise 14 claims, it actually raises 16. Mr. Fisher alleges that Defendants adopted unconstitutional policies or customs of using excessive force, but also incongruously alleges that there is a pattern of violation of those policies. [*See, e.g.,* [Filing No. 1 at 18](Filing No. 1 at 18).] Confusing matters further, both of the claims labeled as Count 14 reference the Defendants as being employees of the City of Bicknell, instead of Marion County, giving the impression that the Complaint has been copied and pasted from a complaint in another case. All of these issues make accurate construction of Mr. Fisher's Complaint unduly cumbersome.

The Case Management Plan instructs Mr. Fisher, on or before January 14, 2019, to file a statement of the claims he intends to prove at trial, specifically stating the legal theories upon which the claims are based. At that time, Mr. Fisher should take care to draft his statement of claims to (1) ensure that the allegations within it apply to his case and his case alone; (2) clarify any duplicative numbering or claims; and (3) specifically identify the legal theories upon which his claims are raised, including what specific federal or state sources of law support them. His statement of claims will potentially guide briefing on summary judgment and/or instruction to the jury at trial.

## IV.
### CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED** in part and **DENIED** in part [10], as follows:

- The Court **GRANTS** Defendants' Motion to Dismiss the Marion County Jail as a defendant;

- The Court **GRANTS** Defendants' Motion to Dismiss Count XI ("§ 1985(3) Conspiracy to Interfere with Civil Rights");

- The Court **GRANTS** Defendants' Motion to dismiss Mr. Fisher's official-capacity claims against Sheriff Layton and Lt. Col. Martin as to any claims based upon a theory of *Monell* liability;

- The Court **DENIES** Defendants' Motion to Dismiss Count VI ("Fourteenth Amendment – Violation of Due Process Clause"); and

- The Court **DENIES** Defendants' Motion to Dismiss Count XIV ("First Amendment").

No partial final judgment shall issue at this time.

Date: 8/1/2018

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**